## Douglas S. Petrea, Defendant in Error, v. Fred Hediger et al., Plaintiff in Error.

1. CONTRACTS—*parol evidence.* In general an unambiguous contract cannot be varied or contradicted by parol evidence of conversations before its execution.

2. CONTRACTS—*parol evidence.* Parol evidence as to an agreement with a contractor, concerning a party wall, is admissible where the written contract for a building is ambiguous in that it does not provide for a north or south wall, and though it is conceded that a north wall is not included, the owner alleges that the south wall was included.

3. Evidence—*affidavit.* An affidavit by a witness in an action by the contractor to enforce a mechanic's lien, stating that certain work was paid for, can only be offered for the purpose of impeachment and is properly rejected where such witness was examined without his attention being called to the affidavit and no foundation was laid for its introduction.

Error to the Circuit Court of Marion county; the Hon. Albert M. Rose, Judge, presiding. Heard in this court at the March term, 1912. Affirmed. Opinion filed October 7, 1912.

L. B. Skipper and Noleman & Smith, for plaintiffs in error.

W. F. Bundy, for defendant in error.

Mr. Presiding Justice Higbee delivered the opinion of the court.

By the writ of error sued out in this case, the plaintiffs in error seek to reverse a decree of the Circuit Court of Marion county, wherein Douglas S. Petrea, the defendant in error, was awarded a mechanic's lien for $1,247.84 against certain premises in Centralia, Illinois, owned by Fred Hediger, one of the plaintiffs in error. The other plaintiffs in error are Annie Hediger, wife of said owner of the premises, the Heims Brewing Company and Robert Rohl, the latter two being mortgagees.

The controversy between the parties, which is the cause of the suit is shown to have grown out of the following state of facts: Hediger was the owner of a lot on one of the business streets of Centralia. On a lot adjoining it on the north a man by the name of Welton was erecting a brick building, the south wall of which was being so constructed that a portion of the same extended over the north line of Hediger's lot and was by contract between the owners a party wall, in which Hediger had a half interest. On July 28, 1909, Hediger entered into a written contract with Petrea, a builder, to erect a business building on his

lot for the sum of $3,592.00. By the contract Petrea agreed to construct the building according to certain plans and specifications which were a part of the same and to furnish all labor and materials. The specifications referred to contained the statement that they were "specifications for labor and materials required for the erection and completion of a business building, to be erected in the city of Centralia, etc.," and further provided that the same kind of brick work, footings and materials, as used in the Welton building, should be furnished for the work.

It appeared that Messrs. G. P. and Berthold Baldridge were owners of the premises immediately south of Hediger's, which at the time the contract was made, were vacant. Later, on August 6, 1909, a written contract was entered into between Hediger and the Baldridges, by which it was agreed that a party wall should be erected, resting one-half upon the premises of each, for which the Baldridges agreed to pay Hediger the sum of $250.00 as their half of the cost of building the same. Petrea proceeded to erect the building, including the south wall, and prior to the commencement of this suit had received on his contract $2,986.26, but claimed there was still due him the sum of $1,247.84. This amount included, in addition to the balance due on the written contract above referred to, $142.10 for extras and the sum of $500.00 claimed by Petrea to be due him for the erection of the south party wall, the building of which he says was not provided for or included in the original contract.

Plaintiffs in error do not contest the bill for extras but deny that Petrea is entitled to $500.00 for the building of the south party wall and aver that the same was included in the written contract price of $3,592.00. They also claim that the material used in the building was inferior, that the construction was imperfect, that the building was not completed according to contract, and that by reason thereof Petrea was not entitled to enforce his lien. Petrea testified that when the con-

tract in writing was made it was understood between the parties that the south wall was not included; that it was not then determined whether the south wall would be all built on Hediger's ground or whether it would be a party wall with the center on the line, nor was it then decided who would build it if a party wall should be decided upon; that if it was decided that Hediger should have the wall built, it would cost $500.00 in addition to the price fixed by the contract. It also appeared that Petrea in making his contract with the sub-contractor Sliger, who did the brick work, provided only for the front and rear walls; that after the partnership wall was agreed upon between Hediger and the Baldridges, Petrea ordered Sliger to go ahead and build it and paid him $500.00 for it; that the Baldridges paid Hediger $250.00 for their half of the wall; Sliger testified that he had a talk with Hediger a short time before the written contract was signed and Hediger told him to leave out the partnership wall in his figuring, as he did not know but that some one else would build it; also that after the wall was built he and Petrea went to Hediger for his money and the latter said, "Your money is now in the bank and the work is all done, and I cannot see for my life what they are holding out for;" that he heard a conversation between Petrea and Hediger wherein Petrea said that he had heard Hediger was going to object to paying for the partnership wall, and Hediger denied such intention and said he would pay for the job as quick as he could get straightened out and get the money from the Heims Brewing people. Hediger denied there was any oral agreement about the partnership wall and claimed that he understood the same was included within the written contract. The court below sustained the claim of Petrea and gave him a lien upon the premises in question for the full amount claimed.

Plaintiffs in error assert the decree should be reversed for the reason that (1) the building of the south

wall was included within the original contract and covered by the price therein named to be paid; (2) because the building was not completed according to the terms of the contract, and (3) because the court erred in admitting evidence of the parol contract in reference to the construction of the south wall and in refusing to admit a certain affidavit made by the witness Sliger and offered in evidence by plaintiffs in error. Without going into details we think it sufficient to say that the evidence in our opinion fully sustained the finding of the court below, that the building of the south wall was not included within the original contract and that the contract price therein named was not intended to cover the erection of the same.

In regard to the second reason for reversal assigned by plaintiffs in error, it appeared from the evidence introduced by them that there were certain defects, imperfections and omissions in the building when turned over by Petrea, but on the other hand it appeared from the evidence introduced by Petrea, that some of these imperfections had been corrected, that the contract did not call for finishing all the inside work, that other defects would be provided for and adjusted by workmen who would follow him, being part of their work and that the defects complained of were not important.

The proofs upon the whole appear to us to show that Petrea had in good faith substantially complied with the terms of his contract. The brief of plaintiffs in error is largely devoted to the citation of authorities in support of their contention that the court erred in admitting parol evidence, relating to the construction of the south party wall. They insist that the written contract is clear and unambiguous and that all previous negotiations between the parties must be held to be merged in the contract. We grant that as a general rule a contract, unambiguous in its terms, cannot be varied, contradicted or modified by parol evidence of conversations before its execution. Sexton

v. Barrie, 102 Ill. App. 586. But in this case the written contract is not wholly free from ambiguity. It is conceded by the parties that no north wall was to be constructed by Petrea and yet it could be as well held that its terms included a north wall as a south wall, nothing being said in the contract about either one of them. The evidence also tends to show that after the south party wall had been agreed upon and ordered to be constructed, Hediger fully recognized his obligation to pay for the same. Under all the circumstances, we think the admission of the oral evidence of the agreement of Hediger to pay for the south wall as an independent matter was proper and that it was necessary to prevent any injustice being done.

Upon the trial plaintiffs in error sought to introduce an affidavit made by the contractor Sliger, October 30, 1909, in which he stated that all the material and labor in connection with the brick work had been fully paid for and that there were no claims or liens against the property for the same. Sliger was not a party to the suit but only a witness. The affidavit could only have been offered for the purpose of impeachment. Sliger had been examined upon the witness stand and his attention not called to the affidavit, and no foundation having been laid for its introduction, it was properly rejected.

This case appears to us to have been determined correctly by the court below upon the facts and no error materially effecting the rights of the parties appear to have been made upon the trial. The decree entered in the case will therefore be affirmed.

*Decree affirmed.*